UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY S. DURHAM, | ) | |
| *Petitioner,* | ) | Cause No. 1:17-cv-3590 RLM-DML |
| v. | ) | |
| UNITED STATES OF | ) | (Arising from 1:11-cr-42(1) JMS-DML) |
| AMERICA, | ) | |
| *Respondent.* | ) | |
| | ) | |

ORDER AND OPINION

On June 20, 2012, a jury found Timothy Durham guilty of conspiracy to
commit wire fraud and securities fraud (Count 1), in violation of 18 U.S.C. § 371;
ten counts of wire fraud (Counts 2–11), in violation of 18 U.S.C. § 1343; and
securities fraud (Count 12), in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. §
240.10b-5. In December 2012, the court imposed an aggregate term of 600
months' imprisonment, two years of supervised release, $208,830,082.27 in
restitution, and a $1,200 special assessment. The court of appeals vacated Mr.
Durham's convictions on Counts 2 and 5, affirmed in all other respects, and
remanded for resentencing without Counts 2 and 5. United States v. Durham,
766 F.3d 672 (7th Cir. 2014). At resentencing, the court imposed an aggregate
term of 600 months' imprisonment, no term of supervised release,
$208,830,082.27 in restitution, and a $1,000 special assessment. After the court
of appeals affirmed the new sentence, United States v. Durham, 630 F. App'x
634 (7th Cir. 2016), and the Supreme Court denied Mr. Durham's writ of
certiorari, Durham v. U.S., 137 S. Ct. 321 (2016), Mr. Durham filed a timely
petition pursuant to 28 U.S.C. § 2255 asking that his conviction and sentence

be vacated. [Doc. No. 1]. For the reasons that follow, the court dimisses Mr. Durham's motion in part and orders an evidentiary hearing on the remaining grounds.

## I.    BACKGROUND

In 2001, Timothy Durham and James Cochran bought Fair Finance Company through a holding company, Fair Holdings. Fair Finance was a financial services company that bought consumer receivables at a discounted rate. The company funded these purchases by selling investment certificates to individuals in Ohio. These certificates functioned much like certificates of deposits, but they weren't FDIC insured. When the certificates matured, Fair Finance sent the holder a check for the interest and the owner had the option to redeem the certificate, renew it, or, if no action was taken, continue to earn interest at the previously fixed rate.

Before Mr. Durham and Mr. Cochran purchased Fair Finance, certificates were limited to $50,000 in value to ensure that the company could redeem certificates when they matured. After Mr. Durham became CEO, Fair Finance began to offer certificates for longer terms, higher amounts, and higher interest rates. Fair Fiance's outstanding certificate liabilities soon doubled. The company didn't use the proceeds from the sale of certificates primarily to purchase additional consumer receivables; instead, it directed much of the capital to loans for Mr. Durham, Mr. Cochran, and companies Mr. Durham owned. These loans were mostly made on exceptionally favorable terms, poorly documented, and

amended periodically to increase the debtors' borrowing limits. Fair Finance received few payments on these loans, yet listed them as assets supporting the sale of certificates.

Fair Finance began to experience financial issues in 2008. The company's insufficient funds cause it to fall behind on payments of interest and principal, but employees told investors that the delays were a result of computer and banking issues. The FBI eventually began investigating Fair Finance based on statements by a former Fair board member. After an eight-month investigation, the FBI obtained authorization to install a wiretap on Mr. Durham's phone. Using this wiretap, the FBI recorded phone calls in which Mr. Durham and his associates discussed how to hide Fair Finance's financial condition, how some of their employees could "bust" them, and how to "vaporize" the bad debts from the company's disclosures to the Ohio Department of Securities. The FBI then sought and obtained a search warrant for Fair Finance's offices. After the seizure of the company's computer servers effectively shut the company down, Fair Finance went into bankruptcy. Some $215 million in claims were filed against the bankruptcy estate, but the trustee was only able to recover $5.6 million of assets.

## II. DISCUSSION

Mr. Durham's petition contends that his counsel at different stages of the proceeding provided him with ineffective assistance of counsel. The rules

governing petitions filed under 28 U.S.C. § 2255 provide that once a motion is filed:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. The court has discretion to deny an evidentiary hearing when the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief. Cooper v. United States, 378 F.3d 638, 642 (7th Cir. 2004) (citing United States v. Kovic, 830 F.2d 680 (7th Cir. 1987)). A hearing isn't necessary if the petitioner's allegations are "'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" Martin v. United States, 789 F.3d 703, 706 (7th Cir. 2015) (quoting Kafo v. United States, 467 F.3d 1063, 1067 (7th Cir. 2006)). The allegations contained within a verified motion to vacate, signed under penalty of perjury, become evidence and "permit the district court to evaluate properly the movant's allegations and to determine whether a sufficient threshold showing has been made to warrant further proceedings." Kafo v. U,S,, 467 F.3d at 1068.

To prevail on an ineffective assistance of counsel claim, Mr. Durham must show both that his attorney's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 688-693 (1984). This is a difficult standard to meet; Mr. Durham must show both "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive [Mr. Durham] of a fair [result]." Strickland v. Washington, 466 U.S. at 687.

With regard to the performance prong of the Strickland inquiry, there is a strong presumption that counsel performed effectively. *See* Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Vinyard v. United States, 804 F.3d at 1225 (quoting Strickland v. Washington, 466 U.S. at 687). Because reviewing courts shouldn't second-guess counsel's strategic choices, the burden of showing that counsel's decisions fell outside the wide range of reasonable strategic choices "rest[s] squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013).

If counsel's performance was deficient, the petitioner must still "show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460

F.3d 844, 848 (7th Cir. 2006) (quoting <u>Strickland v. Washington</u>, 466 U.S. at 694).

Mr. Durham presents 12 grounds for his 28 U.S.C. § 2255 motion to vacate. The court addresses them as Mr. Durham categorized them.

*Ground 1: Trial counsel failed to investigate and subpoena witness pretrial and at trial*

Mr. Durham raises several issues with the performance of John Tompkins, who represented him at trial. An attorney representing a criminal defendant has a duty to investigate the prosecution's case and various defense strategies or to "make a reasonable decision that makes particular investigations unnecessary." <u>Brown v. Sternes</u>, 304 F.3d 677, 691 (7th Cir. 2002) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986)). There are some criminal cases in which the defense strategy won't be reasonable without consulting with experts or introducing expert evidence. <u>Thomas v. Clements</u>, 789 F.3d 760, 770 (7th Cir. 2015). An attorney needn't present each witness which the defendant suggests to him. <u>United States v. Balzano</u>, 916 F.2d 1273, 1294 (7th Cir. 1990). "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." <u>Patel v. United States</u>, 19 F.3d 1231, 1237 (7th Cir. 1994).

Mr. Durham first argues that Mr. Tompkins was unconstitutionally ineffective because he didn't properly secure the services of two investment firms, Stout Risius Ross and Houlihan Valuation Advisors, to serve as experts. Mr.

Durham argues that testimony from Stout Risius Ross and Houlihan would have shown that his actions were financially reasonable and not fraudulent, but his speculation about their opinions and testimony isn't enough to meet his burden on an ineffective assistance claim. See United States v. Anderson, 61 F.3d 1290, 1298–1299 (7th Cir. 1995). Mr. Durham asserts that both Stout Risius Ross and Houlihan conducted favorable preliminary financial analyses, but he doesn't specify what Stout Risius Ross or Houlihan personnel would have testified to after a final analysis. Mr. Durham's assertion doesn't satisfy his burden since he can't specify what the missing evidence would have been and can't prove that the testimony would have produced a different result. *See* Patel v. U.S., 19 F.3d at 1237.

Mr. Durham next contends that Mr. Tompkins was unconstitutionally ineffective because he didn't contract a computer programmer to design and write a program to open and effectively search the 80 disks and a hard drive the government provided in discovery. Mr. Durham argues that not hiring a computer expert allowed Mr. Tompkins to pocket an additional $25,000, but meant he never opened or reviewed extensive discovery. Mr. Durham describes in great detail why he thinks Mr. Tompkins's alleged failure to access and review digital discovery made his performance deficient, but he doesn't assert that the result of the proceedings would have been different had Mr. Tompkins secured the services of a computer programmer and accessed and reviewed the digital discovery the government provided. *See* Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. at 694).

Mr. Durham also argues that Mr. Tompkins was unconstitutionally ineffective because Mr. Tompkins didn't cut back on his work load or hire additional lawyers to work on Mr. Durham's case. He asserts that only after much prodding from Mr. Durham did Mr. Tompkins even hire a part-time law student to assist on the complicated case. Mr. Durham asserts that he and Mr. Tompkins discussed the need for more lawyers, but he doesn't specify how he was prejudiced by the decision to not hire additional lawyers or that additional lawyers would have produced a different result. Since Mr. Durham didn't specify how additional lawyers would have produced a different result, his claim cannot succeed. *See* Patel v. United States, 19 F.3d at 1237.

Mr. Durham next contends that Mr. Tompkins was unconstitutionally ineffective because he didn't hire a wiretap expert to opine as to whether the FBI could listen to calls on the line when the Voice Box wiretap software was installed and before they had received a warrant. Mr. Durham asserts that he identified a former FBI agent who could review the situation and offer his advice, but Mr. Tompkins refused to hire the expert. Mr. Durham speculates that this expert could have been helpful to the defense with respect to his motion to suppress the wiretap evidence and at the *Franks* hearing, but he offers no information about the expert's testimony or how, specifically, it would have changed the outcome of the court's ruling on the motion to suppress. These conclusory assertions are not sufficient to require an evidentiary hearing. *See* Martin v. United States, 789 F.3d at 706.

Mr. Durham next argues that Mr. Tompkins's performance was unconstitutionally ineffective because he didn't call a number of witnesses to testify on Mr. Durham's behalf. An attorney needn't present every witness which the defendant suggests to him. United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990). "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Mr. Durham has alleged enough facts about the testimony that would have been provided by Terry Whitesell, Don Lagrone, Todd Bontrager, Ron Kaffen, Keith Schaffter, Rusty Riggenbach, Keith Kuczan, Stephany Brogan, Jeff Birk, Erin Beesley, and Jim Covert that the court can't conclusively find that he is not entitled to relief, *see* Cooper v. United States, 378 F.3d at 642, so the court will hear evidence on this issue.

Mr. Durham also alleges that Mr. Tompkins failed to properly cross-examine two government witnesses: Ben Kimmerling and Anthony Schlitche. Mr. Durham provided sufficiently detailed allegations of what Kimmerling and Schlitche's testimony would have been on proper cross-examination and the effect that testimony would have had to require the court to hold an evidentiary hearing. *See* Cooper v. United States, 378 F.3d at 642.


*Ground 2: Appellate counsel failed to challenge motion to suppress wiretap based on lack of probable cause*

A different lawyer, James Mutchnik, represented Mr. Durham on appeal, and Mr. Durham argues that Mr. Mutchnik, too, was unconstitutionally ineffective because he didn't argue on appeal that Judge Magnus-Stinson erred in denying his motion to suppress a wiretap and the evidence gained as a result of the wiretap. Mr. Durham argued in his suppression motion that FBI Agent Halliden knowingly and intentionally, or with disregard for the truth, made material false statements and omissions in the application and affidavit in support of the application. Judge Magnus-Stinson denied the motion to suppress after holding a *Franks* hearing.

Appellate lawyers needn't present every nonfrivolous claim but are expected to select the most promising issues for review. Shaw v. Wilson, 721 F.3d 908, 915 (7th Cir. 2013). Appellate counsel's performance is only deficient if the counsel "abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim that he actually presented" and counsel's decision to forego the nonfrivolous claims didn't "ha[ve] a strategic justification." Id. (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). "This standard is difficult to meet because the comparative strength of two claims is usually debatable." Id.

Mr. Mutchnik appealed on a number of grounds. He challenged the sufficiency of the evidence on two wire fraud counts, challenged the sufficiency of the wiretap application, argued that the district court erred in its jury instructions, and contended the prosecutor committed misconduct. The court of appeals agreed with Mr. Mutchnik's argument on the sufficiency of the evidence

on the two challenged wire fraud counts, vacated those counts, and remanded for resentencing without those counts.

Mr. Durham can't demonstrate that the suppression issue was clearly stronger than those presented by Mr. Mutchnik. Mr. Mutchnik pursued two claims that ultimately succeeded. The claim that the wiretap and derivative evidence should have been suppressed wasn't clearly stronger than those two claims which succeeded or the other claims that didn't succeed.

*Ground 3: Trial counsel failed to call necessary witnesses at Franks hearing*

Mr. Durham next argues that Mr. Tompkins's performance at trial fell below the constitutional floor when he didn't call Dan Laikin, CEO of one Durham-controlled company and a board member of two others, or Mr. Laikin's lawyers to testify at the *Franks* hearing on his motion to suppress the wiretap. Mr. Durham contends that the testimony of Mr. Laikin or his attorneys would have demonstrated that Agent Halliden's statements deliberately false or made with a reckless disregard for the truth.

Mr. Durham says Mr. Tompkins didn't call Mr. Laikin because Mr. Laikin's lawyers told him that Mr. Laikin planned to invoke his Fifth Amendment right against self-incrimination (he pleaded guilty to conspiracy to commit securities fraud just a few years before the hearing). Mr. Durham claims that Mr. Laikin had no grounds for invoking the Fifth Amendment at the hearing. Mr. Durham also contends that Mr. Tompkins didn't call Mr. Laikin's lawyers because he

believed the communications at the proffer were covered by attorney-client privilege and argues that Mr. Laikin's lawyers could have testified about Mr. Laikin's statements at his proffer because they weren't protected by attorney-client privilege and were admissible under both 804(a) and 807. The court need not consider whether counsel was deficient if the court finds that the alleged deficiency did not prejudice the defendant. Richardson v. United States, 379 F.3d 485, 487 (7th Cir. 2004).

Mr. Durham's allegations don't demonstrate prejudice to his case. To show prejudice, Mr. Durham must show that "there is a reasonable probability that, but for the counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694. To succeed at the *Franks* hearing, it isn't enough to show that an informant lied to the government officer, who then included those lies in the complaint. United States v. McAllister, 18 F.3d 1412, 1417 (7th Cir. 1994). Instead, the evidence must show that the officer submitting the complaint perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations. United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000).

Mr. Durham admits that he doesn't know how Mr. Laikin or his lawyers would have testified at the *Franks* hearing. Mr. Durham states that "[i]t was obvious that either Laikin lied under oath in his deposition or he lied to Halliden at the proffer. Alternatively, Halliden lied about what Laikin said at the proffer."

He cites to Mr. Laikin's bankruptcy deposition to support his assertion that it is likely Mr. Laikin's lawyers would have testified that Agent Halliden misrepresented Mr. Laikin's proffer. Two years had passed between the proffer on March 19, 2009 and the bankruptcy deposition in August of 2011. The statements to which Mr. Durham cites don't directly contradict Agent Halliden's description of the proffer. In most of the answers Mr. Durham cited, Mr. Laikin said he didn't recall. In fact, at the time of the bankruptcy deposition, Mr. Laikin couldn't even recall when he had ceased his role as a director of Fair Finance. Additionally, Mr. Durham asserts that "Laikin had a motive to encourage Durham's prosecution and to have Fair destroyed and bankrupt." Mr. Durham's contradictory assertion that either Mr. Laikin lied at the proffer or Agent Halliden lied in his affidavit is not sufficient to not undermine confidence in the *Franks* hearing.

*Ground 4: Trial counsel was ineffective regarding search warrant*

Mr. Durham also argues that Mr. Tompkins provided unconstitutionally ineffective assistance of counsel in failing to get the evidence gathered through search warrants suppressed. The search warrants were based on the same facts set forth in the wiretap affidavit and portions of calls obtained via the wiretap. Much of Mr. Durham's claim in Ground 4 rests upon the same basis as his claim in Ground 3. As explained as to Ground 3, Mr. Durham can't show prejudice as a result of Mr. Tompkins's failure to call Mr. Laikin or his lawyers.

Mr. Durham also claims that Mr. Tompkins was ineffective for failing to challenge the search warrant executed at the Fair offices in Ohio. Mr. Durham doesn't allege that there were circumstances unique to the Ohio offices that would have justified suppression of the evidence obtained from them. Since the arguments raised didn't prevail as to the Indianapolis search warrant, Mr. Durham hasn't provided a basis to believe that he would have prevailed had Mr. Tompkins properly challenged the Ohio search warrant. Mr. Durham has not alleged sufficient facts to show prejudice.

*Ground 5: Trial counsel was ineffective regarding suppression of wiretap*

Mr. Durham maintains that Mr. Tompkins was unconstitutionally ineffective in his claim to suppress what Mr. Durham thinks was an illegal wiretap. Mr. Durham first argues that Mr. Tompkins should have hired an expert in the area of PEN Data and Title III software. Mr. Durham doesn't allege what such an expert might have said. He also states that he and Mr. Tompkins agreed to obtain the original recorded wiretap disk, a CALEA certificate from Verizon, and an expert to determine whether Verizon customers could be accessed without the Verizon's knowledge and consent. Again, Mr. Durham only speculates as to what information may have been obtained and he can't show that Mr. Tompkins's failings changed the outcome of the proceeding. *See* Martin v. United States, 789 F.3d at 706.

*Ground 6: Trial counsel and counsel at resentencing were ineffective for failure to seek recusal of Judge Magnus-Stinson*

Mr. Durham claims that his trial was unconstitutionally inadequate for failing to seek now-Chief Judge Magnus-Stinson's recusal at trial and sentencing, and his subsequent counsel was ineffective for failing to seek the recusal of Judge Magnus-Stinson during resentencing. Mr. Durham laid out an extensive factual background for his argument that his counsel should have sought the recusal of Judge Magnus-Stinson. The factual background can be summarized as follows: (1) that Judge Magnus-Stinson was biased against him because he, as a major Republican figure in Indiana, was thorn in the side of Democratic politicians, including Evan Bayh, for whom Judge Magnus-Stinson worked; (2) Judge Magnus-Stinson was biased against him because of his antagonistic relationship with her mentor, Robert Wagner; (3) that Judge Magnus-Stinson had an anti-wealth bias, which she talked about publicly and during Mr. Durham's proceedings; (4) that Judge Magnus-Stinson demonstrated bias in her appointment of CJA counsel for resentencing; and (5) that Judge Magnus-Stinson showed bias by allowing the SEC to reopen a suit against Mr. Durham and a co-defendant.

Mr. Durham's argument regarding his political background can be summed up as follows: Before becoming a judge, Judge Magnus-Stinson worked with, and for, several people who are or were quite influential in Indiana Democratic Party circles. One such person was Evan Bayh, who chose Judge Magnus-Stinson as counsel when he was governor and appointed Judge Magnus-Stinson to the Marion County Superior Court. While one of Indiana's senators, Senator Bayh endorsed her bid for a magistrate judge position in this

court and recommended that President Obama nominate her for a vacant district judge position in this court in 2010. Senator Bayh drops out of Mr. Durham's narrative at that point, and the narrative suggests no partisan political activity by Judge Magnus-Stinson after she became a United States District Judge.

Judge-Stinson remained friends with, and retained warm feelings for, some of those people. Mr. Durham says he's been active in Indiana Republican Party activities for several decades as a fund-raiser and donor and as one who helps anoint candidates behind the scenes. Mr. Durham believes that, during his involvement in Indiana Republican politics, some of those Democrats have come to see him as a bitter enemy (none of the Democrats attested to that in Mr. Durham's submission, but that's how he sees things).

Mr. Durham makes a similar argument regarding Judge Magnus-Stinson's relationship with attorney Robert Wagner. Mr. Durham states that he had an antagonistic relationship with Robert Wagner. Mr. Durham argues that because Judge Magnus-Stinson worked for Mr. Wagner early in her career and described their relationship as close, she was biased and recusal would have been proper.

Mr. Durham's argument about Judge Magnus-Stinson's anti-wealth bias centers around statements she made during sentencing regarding the people who Mr. Durham defrauded and how he had spent the money and statements during an interview in which she talked about valuing frugality.

Mr. Durham alleges that, had Mr. Tompkins filed a motion to recuse, Judge Magnus-Stinson would have recused herself or the court of appeals would have required her to recuse herself. Mr. Durham relies on 28 U.S.C. § 445(a-b),

28 U.S.C. § 144, and the Due Process Clause. To prevail on this claim, Mr. Durham must show that counsel's decisions fell outside the wide range of reasonable strategic choices. <u>Burt v. Titlow</u>, 571 U.S. 12, 22–23 (2013). Mr. Tompkins' motion, whether directed to the district court or the circuit court, would have had to assert that because Judge Magnus-Stinson used to work for and with, and remains friends with, Democrats, she would be unable to give a fair trial to a Republican who thinks some of those Democrats hate him. The additional bases for bias fare no better: having a mentor who was antagonistic to Mr. Durham doesn't show that Judge Magnus-Stinson was biased against him; being frugal and condemning his use of hard-working people's money to fund an extravagant lifestyle doesn't show bias; Mr. Durham provided no basis for the court to believe that Judge Magnus-Stinson appointed counsel with conflicts; and Judge Magnus-Stinson's allowing the SEC to reopen a case against Mr. Durham in 2016 could not have been a basis for recusal because it hadn't yet occurred. Mr. Durham cites no law to support his proposition that such a motion would produce either self-recusal or a mandated recusal. Mr. Durham's allegations don't overcome the presumption that Mr. Tompkins's decision to refrain from filing a motion to recuse was reasonable.

Neither the facts nor the law support Mr. Durham's claim he received ineffective assistance of counsel at trial, sentencing, and resentencing because his counsel didn't seek Judge Magnus-Stinson's recusal. *See* <u>SEC v. Durham</u>, No. 1:11-cv-00370-JMS-TAB, 2018 U.S. Dist. LEXIS 12886 (S.D. Ind. Jan. 26, 2018).

*Ground 7: Trial counsel had an actual conflict of interest*

Mr. Durham contends that his Sixth Amendment right was violated because Mr. Tompkins had an actual conflict of interest. Mr. Durham asserts that he and Mr. Tomkins agreed that Mr. Durham would give Mr. Tompkins $1 million, from which Mr. Tompkins would pay any litigation expenses, and the rest would constitute his fee as trial counsel. Mr. Durham argues that his counsel didn't secure necessary expert witnesses and a computer programmer to search the government's discovery because those expenses would have reduced his fee, so Mr. Tompkins had a pecuniary interest in direct conflict with Mr. Durham's interests. Mr. Durham contends that Mr. Tompkins's conflict of interest adversely affected his performance because he didn't secure these experts.

"The Sixth Amendment right to effective assistance of counsel encompasses 'a correlative right to representation that is free from conflicts of interest.'" Blake v. United States, 723 F.3d 870, 880 (7th Cir. 2013) (quoting Wood v. Georgia, 450 U.S. 261, 271 (1981)). There are two frameworks to analyze a conflict of interest claim in a collateral proceeding, under either Cuyler v. Sullivan, 446 U.S. 335 (1980) or Strickland v. Washington.

Mr. Durham proceeds under Cuyler, arguing Mr. Tompkins worked under an actual conflict of interest. Cuyler applies "if the defense counsel was faced with a choice between advancing his own interests above those of his client." Blake v. United States, 723 F.3d at 880 (quoting Hall v. United States, 371 F.3d

969, 973 (7th Cir. 2004)). To succeed under the <u>Cuyler</u> framework, Mr. Durham must show an actual conflict, which "exists if the defense counsel was faced with a choice between advancing his own interests above those of his client[,]" <u>Hall v. United States</u>, 371 F.3d at 973 (citing <u>Stoia v. United States</u>, 22 F.3d 766, 771 (7th Cir. 1994), and that the actual conflict had "an adverse effect" on his counsel's performance. <u>Blake v. United States</u>, 723 F.3d at 880. He can make such a showing "by demonstrating 'that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest.'" <u>Id</u>. (quoting <u>Hall v. United States</u>, 371 F.3d at 974).

While conflict of interest typically arises when a lawyer represents two or more co-defendants, "[a] conflict may also arise when a client's interests are adverse to his lawyer's pecuniary interests." <u>Daniels v. United States</u>, 54 F.3d 290, 294 (7th Cir. 1995). The court of appeals has cited the Second Circuit's decision holding that a contingency fee between defense counsel and defendant created an actual conflict of interest as an example of an adverse pecuniary interest. <u>Daniels v. United States</u>, 54 F.3d 290, 294 (7th Cir. 1995) (citing <u>Winkler v. Keane</u>, 7 F.3d 304, 308 (2d Cir. 1993)).

Mr. Durham's sworn petition alleges enough facts to require an evidentiary hearing as to whether there was an actual conflict of interest which had an adverse effect on Mr. Tompkins's performance. Mr. Durham argues that he gave Mr. Tompkins $1 million, which was to include both his attorney's fee and litigation expenses, and that his attorney would be able to keep any of the funds that he didn't spend on litigation expense. As Mr. Durham sees it, Mr. Tompkins

would stand to "earn" any dollar not spent on experts or other litigation expenses. Mr. Durham has also alleged sufficient facts relating to the adverse effect of Mr. Tompkins's performance. He cites emails discussing hiring two experts to testify on valuations and other financial material. *See, e.g.*, [Doc. No. 1-24 at 14-16]. He cites a letter Mr. Tompkins sent the government disclosing one of the experts. But Mr. Durham says that Mr. Tompkins didn't present any experts on this issue during the proceedings because he didn't properly fund the experts. Id. at 20-21.

*Ground 8: Appellate counsel was ineffective regarding Count 3*

Mr. Durham argues that his appellate counsel, Mr. Mutchnik, was unconstitutionally deficient because he didn't challenge the sufficiency of the evidence with respect to Count 3 of the Indictment. Mr. Durham notes that Mr. Mutchnik successfully challenged the other two counts alleging wire fraud relating to bank wires sent to Fair Finance based on the sufficiency of the evidence and contends he should have challenged the other count as well.

As discussed many pages earlier with respect to Ground 2, an appellate counsel's performance isn't deficient unless counsel "abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim that he actually presented" and counsel's decision to forego the nonfrivolous claims didn't "ha[ve] a strategic justification." Shaw v. Wilson, 721 F.3d 908, 915 (7th Cir. 2013). This standard will be met if counsel disregarded a nonfrivolous claim

was obvious and clearly stronger than those raised without strategic justification. Id. (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Mr. Durham argues that Mr. Mutchnik should have made an identical argument on an additional count of the indictment. He doesn't argue that including this third count would have affected his sentence or somehow been a "clearly stronger" argument that those presented on appeal. Mr. Durham hasn't alleged facts sufficient to require a hearing on this issue.

*Ground 9: Trial counsel was ineffective at first sentencing*

Mr. Durham makes two arguments contending that Mr. Tompkins was unconstitutionally ineffective at sentencing, neither of which require a hearing. His argument that Mr. Tompkins's performance drafting a sentencing memorandum was deficient can't succeed because Mr. Durham admits that another attorney corrected alleged errors and he doesn't challenge the brief actually filed with the court. Accordingly, he can't show prejudice. To the extent he argues his counsel was unconstitutionally deficient because he didn't properly engage an expert on valuation issues, this argument fails for the same reason as his expert issue fails in Ground 1: Mr. Durham didn't submit affidavits from the proposed experts or otherwise indicate what their fully-informed expert opinions would have been and how they would have testified at sentencing. In fact, Mr. Durham concedes that neither expert was able to complete an analysis of the financials about which he hoped they would testify. Mr. Durham hasn't

alleged facts sufficient to show that any testimony from an expert would have produced a different result. *See* <u>Patel v. United States</u>, 19 F.3d at 1237.

Mr. Durham also argues that Mr. Tompkins should have submitted certain evidence to the jury and at sentencing, contending that the evidence would have provided context and prevented a finding of intended loss. Given the amount of evidence the government introduced, there isn't a reasonable probability that the introduction of the evidence would have led to a different result. <u>Strickland v. Washington</u>, 466 U.S. at 690.

Mr. Durham also takes issue with the court's application of the guidelines. He contends that the court used the incorrect version of the sentencing guidelines, citing to the amendments that were proposed in January 2015. The cited amendment wasn't effective at either the time sentencing or resentencing. Mr. Durham hasn't demonstrated any error or that any supposed error resulted "in a complete miscarriage of justice." <u>United States v. Coleman</u>, 763 F.3d 706, 708 (7th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 16, 2014) (quoting <u>Blake v. United States</u>, 723 F.3d 870, 878-79 (7th Cir. 2013)).


*Ground 10: Appellate counsel failed to challenge fraud loss based on intervening Supreme Court case that was issued during appeal*

Mr. Durham contends his appellate counsel, Mr. Mutchnik, was unconstitutionally deficient because he didn't challenge the district court's actual fraud loss determination. Mr. Durham argues that Mr. Mutchnik should have alerted the court to the then-newly-issued Supreme Court decision <u>Burrage v. United States</u>, 571 U.S. 204, 206 (2014), and presented an argument that the

district court didn't find that Mr. Durham's actions were the but-for cause of the actual loss.

Appellate counsel may notify the court of appeals of additional "pertinent and significant" authority after filing a brief. Fed. R. App. P. 28(j). Burrage held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U. S. C. §841(b)(1)(C) unless such use is a but-for cause of the death or injury." Burrage v. United States, 571 U.S. at 218-19.

Mr. Durham maintains that Mr. Mutchnik's failure to alert the court of appeals to Burrage was ineffective assistance of counsel. The government argues that appellate counsel could not have been ineffective because Burrage doesn't apply, but the court of appeals later cited Burrage for the proposition that "[t]he phrase 'result from' imposes a requirement of but-for causation" in actual loss calculations. United States v. Yihao Pu, 814 F.3d 818, 824 (7th Cir. 2016). When examining an ineffective assistance claim, however, the court must avoid the "distorting effects of hindsight[.]" Vinyard v. United States, 804 F.3d at 1225. At the time the court of appeals issued its opinion, Burrage was not so clearly a "pertinent and significant" authority that Mr. Mutchnik's choice to not advise the court of the appeals of the decision rendered the representation unconstitutionally deficient.

In any event, Mr. Durham hasn't shown prejudice. The court of appeals opinion addressed the causation issue in Mr. Durham's appeal. The court said:

The defendants contend that their fraud did not cause the full $202 million in losses. Instead, they cast partial blame on the effects of the 2008 financial crisis and the ensuing recession. But they did not substantiate that claim. The only hard evidence they submitted consisted of an affidavit of a former Obsidian employee attributing Fair's declining value to market forces and valuations generated by Fair itself reporting that it had more assets than liabilities in November 2009. But Fair's own internal accounting could not be trusted; the evidence established widespread manipulation of its financial information. And the affidavit from the former Obsidian employee is very general; it does not indicate how much of the loss in value was attributable to broader problems affecting the American economy. While it is certainly possible that the recession compounded the effects of the defendants' fraud, there is no reliable evidence establishing whether and to what extent it actually impacted Fair's business.

United States v. Durham, 766 F.3d 672, 687 (7th Cir. 2014). Mr. Durham didn't present sufficient evidence to show that any other factor contributed to the actual loss, which would rule out a but-for causation argument. Even Mr. Mutchnik's performance was unconstitutionally deficient, Mr. Durham has not shown prejudice.

*Ground 11: Appellate counsel failed to challenge the sufficiency of the evidence of the wire fraud counts relying on the use of emails and cellular phone calls*

Mr. Durham argues that Mr. Mutchnik was unconstitutionally ineffective because counsel didn't challenge the sufficiency of the evidence with respect to the wire fraud counts that related to the use of email and cell phone calls (Counts 4, 6-11). Mr. Durham can't show that this argument was "clearly stronger than the claim[s] that [Mr. Mutchnik] actually presented." Shaw v. Wilson, 721 F.3d 908, 915 (7th Cir. 2013) (internal quotation marks omitted). As already discussed, Mr. Mutchnik successfully challenged two wire fraud counts for sufficiency of evidence. A challenge to the sufficiency of evidence as to the

interstate nature of the calls and emails wasn't clearly stronger than the issues that Mr. Mutchnik challenged. The government offered evidence that the communications were interstate communication. Agent Halliden testified that Mr. Durham was in California during all of the calls upon which Counts 7-11 were based. [Trial Tr. vol. 3, 745; Trial Tr. vol. 4 921-922]. The calls were to individuals in Indiana and Ohio. The interstate nature of the emails upon which counts 4 and 6 were based are supported by Exhibits 209 and 210. Mr. Durham hasn't shown that Mr. Mutchnik was unconstitutionally ineffective.

*Ground 12: Trial counsel presented an incorrect jury instruction regarding the "in connection" element required under securities fraud*

Mr. Durham claims that Mr. Tompkins's performance was unconstitutionally deficient in providing an incorrect jury instruction regarding the "in connection" element of security fraud. Mr. Tompkins tendered a two-part jury instruction relating to the "in connection" element. Mr. Durham contends that Mr. Tompkins should have tendered the following jury instruction that only includes one of those portions: "[f]urthermore, delaying a redemption of an investment certificate is not a purchase or sale of a security." As before, to succeed on his claim of ineffective assistance of counsel, Mr. Durham must show both "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive [Mr. Durham] of a fair [result]." Strickland v. Washington, 466 U.S. at 687. The court needn't consider whether the counsel was deficient if the court finds that the alleged deficiency did not

prejudice the defendant. <u>Richardson v. United States</u>, 379 F.3d 485, 487 (7th Cir. 2004). Mr. Durham can't show prejudice because the instruction he says Mr. Tompkins should have tendered would also have been rejected.

The court of appeals made clear that the civil case law that the defendants cited in an attempt to limit the scope of criminal liability under § 10(b) was inapplicable. Specifically referring to the language that Mr. Durham contends Mr. Tompkins should have used, the court wrote

> The defendants urged the court to instruct the jury that "[s]imply continuing to hold a security does not qualify" as a purchase or sale of a security. This argument was premised on civil cases involving the judicially created private cause of action under § 10(b) and Rule 10b-5, but the "rules governing private Rule 10b-5 actions ... developed differently from the law defining what constitute[s] a substantive violation of Rule 10b-5." <u>Merrill Lynch</u>, 547 U.S. at 80... [W]hat matters in this context is the scope of substantive criminal liability under § 10(b), not the judicially created rules for private civil actions. *See* <u>Merrill Lynch</u>, 547 U.S. at 84 ("Blue Chip Stamps ... purported to define the scope of a private right of action under Rule 10b-5—not to define the words 'in connection with the purchase or sale.'"); *see also* <u>Blue Chip Stamps</u>, 421 U.S. at 751 n.14 ("[T]he purchaser-seller rule imposes no limitation on the standing of the SEC to bring actions for injunctive relief under § 10(b) and Rule 10b-5."). This line of cases does not provide a defense to criminal liability for securities fraud. The proposed instruction thus would have misled the jury about the scope of § 10(b).

<u>United States v. Durham</u>, 766 F.3d 672, 682-83 (7th Cir. 2014). Mr. Durham suffered no prejudice by Mr. Tompkins not proposing the instruction which Mr. Durham suggested because that instruction is an incorrect statement of law. Mr. Durham cannot succeed on a claim of ineffective assistance of counsel based on this jury instruction.

### III.  CONCLUSION

Accordingly, the court:

1.  DISMISSES IN PART Ground 1. The court dismisses Mr. Durham's claims as to Mr. Tompkin's failure to obtain the services of investment experts, hire a computer programmer, engage a wiretap expert, and bring in additional lawyers. The court will hear evidence on Mr. Durham's claims regarding the testimony of Terry Whitesell, Don Lagrone, Todd Bontrager, Ron Kaffen, Keith Schaffter, Rusty Riggenbach, Keith Kuczan, Jeff Birk, Erin Beesley, Jim Covert, Ben Kimmerling and Anthony Schlitche and on Mr. Durham's claims relating to the cross-examination of Ben Kimmerling and Anthony Schlitche.

2.  DISMISSES Grounds 2-6;

3.  Will hear evidence as to Ground 7; and

4.  DISMISSES Grounds 8-12; and

An evidentiary hearing will be scheduled in a separate order.

SO ORDERED.

ENTERED:  ___October 25, 2019___


_____/s/ Robert L. Miller, Jr._____
Judge, United States District Court
For the Southern District of Indiana
Sitting by designation

Distribution:

TIMOTHY S. DURHAM
60452-112
MCCREARY - USP
MCCREARY U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 3000
PINE KNOT, KY 42635


Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov